IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RODNEY ANTHONY ROBERTSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-10-1319 |
| BRIAN A. IULIANO, M.D. *et al.* | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Rodney Anthony Robertson ("Plaintiff" or "Robertson") has brought this medical malpractice action against Defendants Brian A. Iuliano, M.D. ("Dr. Iuliano"), Neurosurgery Services, LLC ("Neurosurgery") and St. Agnes Healthcare, Inc. ("St. Agnes") (collectively Defendants) alleging that Defendants failed to obtain his informed consent to the back surgery he underwent on June 22, 2006.[1]  Specifically, Robertson claims that had he been informed of the risks of infection, he would not have undergone the surgical procedure.  He seeks damages in the form of loss of income, medical bills and other damages associated with the infection he contracted as a result of the surgery.  The original action was filed in the Circuit Court for Baltimore City and then removed to this Court by Defendant Dr. Iuliano on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b).

---

[1] Plaintiff had also initially named Neurosurgery Associates, Inc. as a defendant in this case.  The claims against this defendant were dismissed without prejudice by stipulation of the parties on September 6, 2012. Stipulation of Dismissal, ECF No. 41.

1

Defendants St. Agnes's and Neurosurgery's Motions for Summary Judgment (ECF Nos. 46 & 47) are presently pending before this Court. The parties' submissions have been reviewed and a hearing was held on December 4, 2012. For the reasons that follow, Defendants St. Agnes Healthcare, Inc.'s and Neurosurgery Services, LLC's Motions for Summary Judgment (ECF Nos. 46 & 47) are GRANTED. Judgment shall be entered in favor of Defendants St. Agnes Healthcare, Inc. and Neurosurgery Services, LLC against the Plaintiff.

BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). In February of 2006, Plaintiff Rodney Anthony Robertson ("Plaintiff" or "Robertson") worked full-time for Lowe's Home Improvement and was severely injured while delivering a dryer to a customer. Pl.'s Dep. 18:1-19-5, June 20, 2012, ECF No. 46-1. The pain first affected his leg then radiated through his back and became progressively worse. *Id.* 18:6-18. On May 5, 2006, the pain forced Robertson to go to the emergency room at St. Agnes Hospital in Baltimore. *Id.* at 20:3-21:7. In the days following his visit to the hospital, Robertson visited his primary care physician who referred him to Defendant Dr. Iuliano. *Id.* at 23:1-9. At the time, Dr. Iuliano, a surgeon, was employed by Defendant Neurosurgery Services, LLC ("Neurosurgery") and had privileges at several hospitals including St. Agnes Hospital. Iuliano Dep. 10:9-11:25, June 26, 2012, ECF No. 46-2. However, Dr. Iuliano was not employed by St. Agnes Hospital or Defendant St. Agnes Healthcare Inc. *Id.*

2

On May 30, 2006, Robertson met with Dr. Iuliano to review his medical records, his condition and his treatment options.  Pl.'s Dep. 24:1-19.  During this meeting, Dr. Iuliano recommended that Robertson undergo surgery and Robertson agreed.  *Id.*  The surgery was performed by Dr. Iuliano on June 22, 2006, at St. Agnes Hospital.  Pl.'s Dep. 30:2-4, June 20, 2012, ECF No. 52-2.  After the surgery, Robertson developed an infection which required him to undergo two additional surgical operations on July 27 and November 21, 2006.  *Id.* at 62:21-63:3, 86:13-15.  Robertson signed informed consent forms for the latter two surgeries but there is no evidence in the record that a consent form was signed for the first surgery.  *Id.* at 64:10-15, 87:8-15; *see also* Informed Consent Forms, ECF No. 52-4.  These forms are supplied by St. Agnes Hospital to assist physicians in obtaining informed consent.  *Id.*  They provide blank lines on which the physician can describe the condition and procedures the patient will receive as well as ask the patient to agree that the physician as obtained their informed consent.  *Id.*

According to the record, at the time of the initial surgery on June 22, 2006, Robertson did not know, did not care and did not ask who employed Dr. Iuliano.  Pl.'s Dep. 163:3-21, ECF No. 46-1.  Robertson had not researched Dr. Iuliano's qualifications beyond his primary care physician's referral and "considered doctors [to be] self-employed."  *Id.*  Nevertheless, Robertson alleges that Defendants failed to obtain his informed consent to the June 22, 2006 surgery.  Pl.'s Compl., ECF No. 2.  While Robertson has recovered from his surgery and presently works in a position that requires physical labor, he was forced to stop

work for several months due to his pain and the surgeries. Pl.'s Dep. 23:16-18, 117, 182. As a result, he seeks damages in the form of loss of income and medical bills. Pl.'s Compl. ¶ 28.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*,

190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

Under Maryland law, "the doctrine of informed consent imposes on a *physician*, before he subject his patient to medical treatment, the duty to explain the procedure . . . and to warn of any material risks or dangers inherent in or collateral to the therapy." *Sard v. Hardy*, 379 A.2d 1014, 1020 (Md. 1977) (emphasis added). This duty is exclusively imposed on the physician because "unlike the physician, the patient is untrained in medical science, and therefore depends completely on the trust and skill of his physician for the information on which he makes his decision." *Id.* To fulfill this duty, a physician must disclose "the nature of the ailment, the nature of the proposed treatment, the probability of success of the contemplated therapy and its alternatives, and the risk of unfortunate consequences." *Id.* (citation omitted). Where a plaintiff alleges lack of informed consent it is not the "level of skill exercised in the performance of the procedure [which is at issue, but] the adequacy of the explanation given by the *physician* in obtaining" consent. *Dingle v. Belin*, 749 A.2d 157, 165 (Md. 2000) (emphasis added). As in Maryland, other jurisdictions have held that the "physician is uniquely qualified through education and training, and as a result of his or her relationship to the patient, to determine the information that the particular patient should have in order to give an informed consent." *Sherwood v. Danbury Hosp.*, 896 A.2d 777, 792 (Conn. 2006) (quoting *Johnson v. Sears Roebuck & Co.*, 832 P.2d 797, 799 (N.M. App. 1992).

Accordingly, courts have declined to extend the duty to obtain informed consent from the patient to hospitals unless they "specifically assumed the duty" or the physician was an agent of the hospital. *Valles v. Albert Einstein Med. Ctr.*, 758 A.2d 1238, 1243 (Pa. Super. 2000); *see also Wells v. Storey*, 792 So.2d 1034, 1038 (Ala. 1999) ("[C]ourts have uniformly held that the duty to obtain a patient's informed consent rests solely with the patient's physician, rather than with a hospital or its nurses (unless, because of special circumstances, the physician is an agent for the hospital).") (string citation omitted). Even in cases where hospitals have a policy of requiring consent forms to be signed, courts have refused to impose the duty to obtain informed consent on hospitals and its personnel unless that duty was specifically assumed. *See Lincoln v. Gupta*, 370 N.W.2d 312 (Mich. 1985) (holding that a hospital did not have the duty to obtain informed consent where it simply supplied the form which was then signed by the treating physician); *Petriello v. Kalman*, 576 A.2d 474, 478 (Conn. 1990) (reiterating that informed consent "is the sole responsibility of the physician to obtain" and holding that the hospital does not have an independent duty to obtain informed consent from patients). It follows that the duty to obtain informed consent is a non-delegable duty of the physician alone. *See Kelly v. Methodist Hospital,* 664 A.2d 148, 151 (Pa. Super. 1995) ("every jurisdiction which has considered the issue . . . has declined to impose upon hospitals the general duty to obtain informed consent"); *Espalin v. Children's Medical Center of Dallas*, 27 S.W.3d 675, 686 (Tex. App. Dallas 2000) ("the duty to obtain informed consent is a nondelegable duty imposed solely upon the treating doctor"). Accordingly, in order to establish that Defendants St. Agnes and Neurosurgery Services are liable under the

6

informed consent doctrine, Robertson must show that they specifically assumed this duty or that in seeking the informed consent, Dr. Iuliano was acting as an agent of the Defendants.

There are no issues of material facts relating to the Defendants' Motions for Summary Judgment. Dr. Iuliano was Robertson's treating physician. Dr. Robertson was employed by Defendant Neurosurgery but was not employed by St. Agnes. On May 30, 2006, in the offices of Defendant Dr. Iuliano, Robertson agreed to undergo the June 22, 2006 surgery. At that time, Robertson has clearly testified that he neither knew nor cared who Dr. Iuliano's employer was. Pl.'s Dep. 163:3-21. He even admitted that he believed that doctors were self-employed. Dr. Iuliano had privileges at St. Agnes Hospital and the June 22 surgery was performed there. The record does not contain a signed informed consent form for the first surgery, but it does include two informed consent forms for the subsequent July 27, 2006 and November 21, 2006 surgeries.

## I.     Defendant St. Agnes Healthcare Inc. is Not Liable

St. Agnes argues that it is not liable because the duty to obtain informed consent from a patient in Maryland lies exclusively with his or her treating physician. Additionally, St. Agnes contends that it cannot be vicariously liable for the lack of informed consent because there is no evidence of actual or apparent agency between it and Dr. Iuliano. In response to these arguments, Plaintiff argues that St. Agnes has specifically assumed the duty by establishing a policy of obtaining informed consent from patients, as evidenced by the consent forms entered on the record.[2] Moreover, Plaintiff seems to infer that because the

---

[2] Whether in his pleadings or during the Motions Hearing, Plaintiff did not provide any authority to support

7

record does not contain a consent form for the June 22, 2006 surgery, there was a lack of informed consent.

First, the Court of Appeals of Maryland noted that a signed consent form is "simply one additional piece of evidence for the jury to consider in assessing the merits of" a lack of informed consent claim. *Sard*, 379 A.2d at 1019 n. 3. Accordingly, the presence or absence of a signed consent form is not dispositive of the issue.

Second, the St. Agnes Hospital Informed Consent forms are supplied by the hospital to assist physicians in obtaining a record of a patient's informed consent. The forms allow the treating physician to enter the name and details of the procedures involved on blank lines. The forms also ask the patient to agree that the "physician has informed [them] of (A) [the] diagnosis or probable diagnosis; (B) [the] nature of the treatment or procedures recommended; (C) [the] risks or complications involved in such treatment or procedure, . . . (E) [the] anticipated results of treatment." Informed Consent Forms, ECF No. 52-4. Additionally, the forms provide blank lines on which the physician may describe "[a]lternative forms of treatment, including non-treatment." *Id.* Finally, these forms are signed by the physician, the patient and a professional witness. It is undisputed that the St. Agnes Hospital's Informed Consent forms represent a precautionary measure instituted by the hospital as a courtesy to the physicians who perform surgeries on its premises. St. Agnes does not specifically assume the duty to obtain informed consent by means of these forms.

---

the position that a hospital's policy requiring that physicians obtain informed consent somehow extended that duty to the hospital.

Because St. Agnes does not have an independent duty to obtain informed consent and did not specifically assume this duty, it is not liable.

Alternatively, there is no evidence of apparent agency between St. Agnes and Dr. Iuliano. Under Maryland law, the authority of an agent to act for a principal may be actual or apparent. *Citizens Bank v. Md. Indus. Finishing Co.*, 659 A.2d 313, 318 (Md. 1995); *Homa v. Friendly Mobile Manor, Inc.*, 612 A.2d 322, 333 (Md. App. 1992) (citation omitted). "Actual authority is that which is actually granted by the principal to the agent, and it may be express or implied." *Homa*, 612 A.2d at 332-33 (citation omitted); *see also Reserve Ins. Co. v. Duckett*, 214 A.2d 754, 759 (Md. 1965) (clarifying that there can be no implied authority unless there is actual agency). Apparent authority, on the other hand, arises from acts or manifestations by an alleged principal to a third party that lead the third party to believe the alleged agent had authority to act on the principal's behalf. *Klein v. Weiss*, 395 A.2d 126, 140 (Md. 1978) (citation omitted). To establish apparent agency, a plaintiff must demonstrate that (1) misrepresentations by the defendant led him to believe that the agent was acting on defendant's behalf, "(2) this belief was objectively reasonable under all the circumstances; and (3) [the plaintiff] relied on the existence of that relationship in making [his] decision." *Chevron, U.S.A.*, 570 A.2d 840, 845 (Md. 1990).

The record reflects that there was no actual agency between St. Agnes and Dr. Iuliano. Moreover, Robertson's own admissions reveal that the elements of apparent agency are not satisfied. Robertson did not know or care to know who Dr. Iuliano's employer was prior to his surgery and made no attempt at that time to research Dr. Iuliano. Moreover,

Robertson stated that he believed that doctors were self-employed. Therefore, the record does not support a finding of apparent agency between Dr. Iuliano and St. Agnes. Thus, St. Agnes cannot be vicariously liable for Dr. Iuliano's alleged failure to obtain informed consent. Because no issues of material fact remain, summary judgment is awarded in favor of Defendant St. Agnes Healthcare, Inc.

## II.     Defendant Neurosurgery Services, LLC is Not Liable

Defendant Neurosurgery argues it is not liable for Dr. Iuliano's alleged failure to obtain informed consent because that duty lies exclusively with a physician and is nondelegable. Moreover, while there is actual agency between Dr. Iuliano and his employer, Defendant Neurosurgery contends that it is not vicariously liable in this case because in seeking informed consent, Dr. Iuliano and Neurosurgery were not in a master-servant relationship.

The existence of an actual agency relationship may be established by written agreement or inference. *National Mortg. Warehouse, LLC v. Bankers First Mortg. Co., Inc.*, 190 F. Supp. 2d 774, 779 (D. Md. 2002). Actual agency will be inferred based on "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1048 (Md. 1999). An employer is vicariously liable for the negligent acts of its employee when these acts were committed within the scope of employment. *Henderson v. AT&T Information Sys, Inc.*, 552 A.2d 935, 938 (Md. App. 1989). In a master-servant relationship, a master "is not liable for . . . the negligent conduct of his

agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner authorized or directed by the principal, or the result was one authorized or intended by the principal." *Henkelmann v. Metro. Life Ins. Co.*, 26 A.2d 418, 423 (Md. 1942).

No Maryland court has apparently ever addressed the precise issue of whether the duty to obtain informed consent may be imposed on the physician's employer.[3] However, this Court finds Pennsylvania authority persuasive. In addressing this issue, the Superior Court of Pennsylvania, in *Valle v. Albert Einstein Medical Center*, determined that in the context of physicians and hospitals, the physicians are not acting as servants when obtaining informed consent. 758 A.2d 1238, 1245 (Pa. Super. 2000). Specifically, the court noted that "[i]t is the *surgeon* and not the hospital who has the education, training and experience necessary to advise each patient of [the] risks associated with the proposed surgery." *Id.* (quoting *Kelly v. Methodist Hosp.*, 664 A.2d 148, 151 (Pa. Super. 1995)) (emphasis added). This opinion is persuasive in this case. While Neurosurgery Services was Dr. Iuliano's employer, Dr. Iuliano had the exclusive control over the manner in which he performed his duty to obtain informed consent. Additionally, he was the only one with the skill and training as well as the knowledge of Robertson's condition and records to seek his consent. Therefore,

---

[3] Plaintiff relies on *Faya v. Almaraz*, 620 A.2d 327 (Md. 1993) to argue that Defendant Neurosurgery is vicariously liable for Dr. Iuliano's alleged failure to obtain informed consent. In *Faya*, the Court of Appeals held the hospital liable for a surgeon's failure to disclose his HIV-positive status prior to operating. 620 A.2d at 339. According to the court, in failing to disclose his infectious disease, the surgeon breached his duty of care. *Id.* at 333-34. The hospital was held vicariously liable because the legal duty to inform others of infectious diseases extends to all contexts where there is a foreseeability of transmission. *Id.* (citing *B.N v. K.K.*, 538 A.2d 1175 (Md. 1988)). This duty of care is intrinsically different from the duty to obtain informed consent: the first protects against foreseeable harm, *Faya*, 620 A.2d at 333, while the other prevents a physician from substituting his judgment for that of a "mentally competent adult under non-emergency circumstances." *Sard*, 379 A.2d at 1019.

Dr. Iuliano was not acting as a servant of Neurosurgery when seeking Robertson's informed consent. Accordingly, Defendant Neurosurgery cannot be vicariously liable for Dr. Iuliano's alleged failure to obtain informed consent. Because no issues of material fact remain, summary judgment is awarded in favor of Defendant Neurosurgery Services, LLC.

## CONCLUSION

For the reasons stated above, Defendants St. Agnes Healthcare, Inc.'s and Neurosurgery Services, LLC's Motions for Summary Judgment (ECF Nos. 46 & 47) are GRANTED. Judgment shall be entered in favor of Defendants St. Agnes Healthcare, Inc. and Neurosurgery Services, LLC against Plaintiff Rodney A. Robertson.

A separate Order follows.

Dated:    December 10, 2012            ____/s/_____
                                       Richard D. Bennett
                                       United States District Judge